## Case No. 1,676.

BOSTON ELASTIC FABRICS CO. v. EAST HAMPTON RUBBER–THREAD CO.

[1 Holmes, 372; 1 Ban. & A. 222; 5 O. G. 696; Merw. Pat. Inv. 345.][1]

Circuit Court, D. Massachusetts.   May 8, 1874.

PATENTS—INVENTION—ANTICIPATION.

Where the invention described and claimed in a patent is of a machine of specified construction, it is anticipated by a prior machine of substantially the same construction; although a new, and perhaps patentable, use of the machine is suggested in the specification of the patent.

In equity.

J. E. Maynadier, for complainant.
George Gifford and Hillard, Hyde & Dickinson, for defendant.

Before SHEPLEY, Circuit Judge, and BLATCHFORD, District Judge.

SHEPLEY, Circuit Judge.   Letters patent of the United States, dated Jan. 23, 1863, were issued to Liveras Hull for an "improved machine for cutting caoutchouc."   On the tenth day of March, in the same year, Hull assigned to the complainant all his title and interest under said letters patent.   The bill in this case charges the defendant corporation with infringement, in that it has "unlawfully made, used, and sold said patented invention, and manufactured and sold large quantities of rubber thread cut by machines substantially the same as described in said letters patent."

The answer of the defendants admits "that they have used machines for cutting threads which they are advised are covered by the claim of said patent, and they insist and submit that they have a just and lawful right so to do."   The defendants' answer denies that Hull was the first and original inventor of the invention or thing patented by said letters patent, and alleges prior knowledge and use by Robert C. Helm and others named, at New Brunswick, N. J., by the Nashawannuck Company and others named, at East Hampton, Mass.; by Henry G. Hubbard and others at Middletown, Conn.; and also that, prior to the date of Hull's invention, it was described by Thomas Hancock in a book printed in London in 1857, entitled "A Personal Narrative of the Origin and Progress of the Caoutchouc or India-Rubber Manufacture in England."

The patent in this case is for a machine, not for a process.   If it were possible to give to this patent a construction which would secure to the patentee the benefit of

that invention which is suggested perhaps, though not distinctly stated or claimed in the patent itself, but is relied upon in the argument as the invention of Hull (namely, his process of cutting a rubber sheet into threads, whereby a series of parallel threads are cut from a single sheet by a single cut of a single knife), the court would feel disposed to do so; but the language of the patent itself is so clear, that it seems to us necessarily to exclude such a construction. The patent is for "an improved machine for cutting caoutchouc;" the claim is as follows: "I claim my improved caoutchouc cutting-machine, having its several parts constructed and arranged in manner and so as to operate substantially as described, such machine not only having a single drum or cylinder to support, and a revolving knife to cut, a sheet of caoutchouc, as explained, but having machinery for traversing the rotary knife, with reference to the drum, and also having machinery for moving such knife toward and away from the drum, as specified."   It is true the patentee says that his invention "has reference to the separating of a sheet of caoutchouc into narrow filaments or strips," and this language, taken alone, might favor the construction contended for,—that the invention claimed was an art or process;—but the language immediately following is: "And I do declare the same to be fully described in the following specification, and represented in the accompanying drawings, making part thereof of the said drawings."

The drawings represent and the specification describes a machine.   No question is made in this case that the Middletown machine, represented by "Exhibit Middletown," was known and used long prior to Hull's invention.   Complainant does not dispute that it contains all the elements of the Hull machine, except the drum.   He admits the Middletown machine has a drum, but insists that there is a material and substantial difference between the drum in the Middletown and the drum in the Hull machine. The patentee does not describe or confine himself in his specification to a drum of any particular size.   The complainant undertakes to prove by its witnesses that rubber thread could not be practically cut on the drum in the Middletown machine; but this is met and fully overcome by the testimony on that point introduced by the defendants, and by the production in court, as an exhibit in the case, of a series of rubber threads, cut by a single cut on a machine having a drum no larger than those used prior to the invention of Hull.   There can be no doubt that if the Middletown machine were not older than the Hull machine, it would be a clear infringement.

Before Hull cut a series of threads by a single cut of a single knife, it does not ap-

---

[1] [Reported by Jabez S. Holmes, Esq., and here reprinted by permission. Merw. Pat. Inv. 345, contains only a partial report.]

pear to have been done by any one on the machines then in existence. The mode of cutting on the Middletown and other machines, called sometimes bottle-machines, was to construct a bottle or a tube of rubber upon a cylindrical drum, or a drum which was a frustum of a cone; the revolving circular knife cut a strip of rubber from this tube or bottle; the knife, as it traversed along the drum, cutting one continuous strip, which was afterward, in another machine, cut into narrower filaments or strips. But if a thin sheet of rubber, several times longer than the circumference of the drum, be wound about the drum, "in a spiral or watch-mainspring curve," and the knife or rotary cutter be forced into the strip, so as to cut at once through all the layers of the caoutchouc, although the path cut by the rotary cutter will be a helix extending around the main drum, from end to end, it will be found, on removal of the piece of caoutchouc from the drum, that such piece of caoutchouc will be cut lengthwise from end to end of it in a series of parallel strips. This Hull discovered. He invented no new machine, but he operated an old machine in a different manner, and produced a new and different result. That he did not make a patentable invention we are not disposed to decide; but the discovery of a new mode of operating an old machine to produce a new result does not give to him the right to a monopoly of the old machine. Broadly as courts are disposed to construe patents for the sake of upholding a meritorious invention, yet when it is too clear to admit of a doubt that the patent is for a machine, the court cannot change it into a patent for an art. Upon any construction we are able to give to this patent, the defendant is not guilty of infringement, and the bill must be dismissed.

[NOTE. For subsequent litigation between the same parties involving the same patent, see Case No. 1,675.]