## Case No. 1,675.

### BOSTON ELASTIC FABRICS CO. v. EAST HAMPTON RUBBER–THREAD CO.

[2 Ban. & A. 268;[1] 9 O. G. 745.]

Circuit Court, D. Massachusetts. April Term, 1876.

PATENTS—INVENTION—PRIOR PUBLIC USE.

1. The reissued patent for an improvement in cutting sheets of rubber into threads, number 5,903, dated June 2, 1874, granted to the complainants as assignees of Liveras Hull, *held* invalid for want of novelty in the invention.

2. A patent may be defeated by showing that the thing secured by the patent had been invented and put into actual public use prior to the discovery of the patentee, however limited such use (other than experimental) of the prior discovery may have been.

In equity.

James E. Maynadier, for complainants.

George Gifford and Hillard, Hyde & Dickenson, for defendants.

SHEPLEY, Circuit Judge. A former suit between these parties, commenced for alleged infringement of letters patent granted to Liveras Hull, dated January 20, 1863, for an improvement in cutting sheets of rubber into threads, was dismissed upon the ground that the patent, as it then stood, was for a machine, and that the machine used by Hull was substantially the same machine as one of prior date, known to manufacturers of rubber thread as "the bottle-machine." 1 Ban. & A. 222 [Boston Elastic Fabrics Co. v. East Hampton Rubber-Thread Co., Case No. 1,676].

Since the decision in that cause, the patent has been reissued to the complainants, as assignees of Liveras Hull, by reissue 5,903, dated June 2, 1874, as a patent for an art or process, the claim being for "the improved mode of manufacture above described, consisting in cutting the sheet into a series of threads by a continuous cut of one cutter," as described in the specification.

At the hearing of the former cause it clearly appeared that Liveras Hull, without any knowledge of any prior machine, or of any prior use of an art of cutting rubber threads in the mode described in his specification, had invented both the machine and the mode of manufacture. But it also appeared, as clearly, that there was proof of a machine of an earlier date than his invention, although it was unknown to him. It did not quite satisfactorily appear, from the evidence in the former case, that the process or mode of manufacture described by Hull, and now, but not then, claimed, had been practised on the anticipating machine, although that mode of manufacture could have been practised on that machine, or at least on one

differing from it only in the enlarged size of the drum on which the sheet rubber is wound. There was no conclusive evidence in that case that Hull was not the first, as he undoubtedly was in one sense an original, inventor of his mode of manufacture. But this issue was not directly involved in that case, the patent, as it then stood, being for the machine, and not for the art or process. Evidence has now been introduced, much of it coming from witnesses who were not examined before, which seems to prove satisfactorily that a machine was constructed by one Helm during the fall of the year 1860, and completed before the 1st of January, 1861; that a sheet of rubber many yards in length was wound round upon the drum of said machine; that the machine had a single circular cutter, which was pushed up to the drum through the rubber at one end of the cylinder; that the drum was then caused to rotate slowly, and the circular cutter to rotate rapidly, and at the same time to traverse slowly along the face of the drum until it reached the other end of the drum, by which operation the sheet of rubber was cut into a series of threads by a continuous cut of one cutter.

That this was the same process claimed and described in complainants' patent is too clear to admit of dispute. Complainants contend that the process was only imperfectly carried on, that the thread made was imperfect, and that the use of the Helm machine was merely experimental, and the experiment was abandoned before Hull made his invention. The law upon this subject is too well settled to require the citation of any authorities. A patent may be defeated by showing that the thing secured by the patent had been invented and put into actual public use prior to the discovery of the patentee, however limited such use (other than experimental) or knowledge of the prior discovery may have been.

Seven witnesses, who are unimpeached and uncontradicted, testify to the public and practical, not merely experimental, use of the patented process, in New Brunswick, on the Helm machine, prior to the time of the alleged invention by the patentee. They prove that the threads cut by that machine were good, marketable threads, well cut, and publicly made and used in large quantities in the manufacture of both shirred goods and suspenders, and that the fabric made from them was a good, salable fabric, and regularly sold in the market. There is some conflict in the testimony as to the subsequent history of the Helm machine on which this was first cut by the patented process. That history is not material to this inquiry. We are dealing with the mode of manufacture of the thread. The evidence shows that mode of manufacture to have been practised, not for experiment, but in the regular course of business, openly, successfully, and practically within the knowledge of a large num-

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

ber of persons at a time prior to the date of the alleged invention. Bill dismissed.